### REID et al. v. REID.

No. 15380—Opinion Filed June 16, 1925.

Rehearing Denied Nov. 24, 1925.

1. Specific Performance—Gifts—Parol Gift of Land—Validity.

In an action for recovery of real property, where defendant pleads gift by parol agreement and the evidence is clear, explicit, and convincing to the effect that plaintiff and defendant were related by blood or marriage, that plaintiff took defendant in his conveyance to the premises and offered to give same to him as a home and defendant accepted the same and immediately gave up his place where he was living and the business he was engaged in and moved on the said premises with his family and had exclusive possession of the land and premises and thereafter made valuable and lasting improvements on the same and continued in possession for a long time and cultivated the land and paid the taxes on same, such evidence is sufficient to take the conveyance out of the statute of frauds and show sufficient grounds to enforce specific performance as a defense against the plaintiff's right to recover.

2. Ejectment—Parol Gift as Defense to Action—Instruction on Burden of Proof.

In an action for recovery of real estate, where defendant pleads gift by parol agreement, and the plaintiff takes the lead in the trial to a jury and introduces in evidence his muniments of title and testifies to facts tending to show that defendant is unlawfully withholding possession from him and defendant offers his evidence tending to show his defense as pleaded, it is correct for the court to charge the jury, first, that the burden is upon the plaintiff to make out his case by preponderance of the evidence in order to prevail, and then to instruct the jury on the defense of the defendant, that the burden of proof is upon the party alleging the parol agreement to clearly establish the same, together with all the acts constituting a full performance of the contract, in order to prevail in the defense.

3. Specific Performance—Requisites for Validity of Parol Gift of Land.

The general rule is that a parol gift of land, accompanied by possession by the donee, will be enforced in equity when the donee has been induced by the promise of the gift to make valuable improvements to the land, of a permanent nature, and to such an extent as to render a revocation of the gift unjust, inequitable, and a fraud upon the donee. Such a state of facts will take the case out of the statute of frauds, and entitle the donee to enforce specific performance of the gift, or to defend his possession against the donor or his heirs. It must be shown, however, that possession was given and taken in pursuance of and in reliance on the gift, with the knowledge and consent of the giver, and that such possession was exclusive. It is held that defendant's evidence in this case is sufficient to meet the requirements of this rule.

4. Judgment — Judgment Notwithstanding Verdict—When Refused.

Where defendant's evidence is sufficient to

support the verdict, it is not error for the court to overrule a motion by plaintiff for judgment non obstante veredicto.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Muskogee County; O. H. Searcy. Judge.

Action by Sallie Reid and W. C. Reid against W. J. Reid to recover real estate. Judgment for defendant, and plaintiffs bring error. Affirmed.

Bruce & Brewer, for plaintiffs in error.

Glenn Alcorn, for defendant in error.

Opinion by THREADGILL, C.  On September 8, 1922, the plaintiffs, who were Sallie Reid and W. C. Reid, brought their action against the defendant, W. J. Reid, to recover possession of a 40-acre tract of land, being the S. W. ¼ of S. E. ¼ of section 16, T. 15 N., R. 18 E., in Muskogee county. Plaintiffs, in their petition, set up their chain of title and state that the defendant was unlawfully withholding the possession of this land and that they were damaged thereby in the sum of $800. The defendant, by answer, made a general denial, and claimed that he was the owner of the land by gift from the plaintiffs; that the plaintiff W. C. Reid was his nephew; that he had raised him, and out of love and affection for him for services he had rendered them before and after their marriage, they had offered to give him a home, and that they placed him in possession of the premises in December, 1917, and that he had made valuable and lasting improvements on the place, and had lived on it since they placed him in possession, and they had promised to give a deed to it, and that the property was his by gift, and the plaintiffs had no interest in it, and he asked that the title be quieted in him. The cause was tried to a jury on October 22, 1923, and resulted in a verdict and judgment in favor of defendant, and the plaintiffs appealed. Before the appeal was perfected the plaintiff W. C. Reid died, and the cause revived as to him in the name of the executrix, Sallie Reid.

1. The principal contention of plaintiffs is that the evidence is not sufficient to sustain the verdict and judgment. The undisputed facts in the case are about as follows:

Sallie Reid was the wife of W. C. Reid: they married about 1913, when Sallie was a minor 14 years of age, and under guardianship; she was a Creek freedman and had an allotment of land in the Creek Nation, and her guardian bought for her other lands and oil properties and town property; her husband was of the African race, a young man of about 22 or 23 years of age at the time he took her in marriage. The defendant, W. J. Reid, was the uncle of W. C. Reid and reared him from a child; they lived in Redbird, a neighborhood of colored people. The boy was enamored with the girl, Sallie Hodge, and the uncle favored the acquaintance. It became necessary for Sallie to make a trip to Texas, and the defendant, knowing her family and being a trusted friend, she was committed to his care for the trip sometime in the spring of that year, and the boy, Curtis, followed a short time thereafter, and in a few months the girl returned and they were married at Redbird and lived in the home of the defendant and his wife for about three months, then moved out into a home prepared by Sallie's guardian in Redbird, and thereafter moved into a home prepared for them by the guardian in Muskogee. While they lived in Redbird the uncle and the nephew were in the telephone business. After the nephew married and moved to Muskogee he gave up all his interest in the telephone business to his uncle. W. J. Reid's wife was a schoolteacher and was teaching in Texas at the time when her husband made the trip there with Sallie; thereafter, she returned to Redbird and taught school in that neighborhood. In February, 1919, Sallie's guardian bought the 40 acres in controversy. The land was near Muskogee, where the plaintiffs then lived. It had a dwelling house and other improvements on it and was fit for farming. On November 15, 1917, Sallie became 18 years of age; at the time she became of age there was some talk of having her adjudged an incompetent and placed under guardianship as such, as she had acquired a large estate about 1,900 acres of land as well as other valuable property, and she and her husband went to Kansas City, and on November 17, 1917, she executed a deed of trust placing all her property in the hands of H. C. House, W. C. Reid, her husband, and J. J. Ragsdale, her stepfather, as trustees, to hold and manage for her, her property, and to protect her from "grafters."

On September 7, 1918, the trustees conveyed all the property back to Sallie Reid they had taken by the trust deed. and November 4, 1918, Sallie conveyed, by warranty deed, the 40 acres in controversy to her husband. W. C. Reid. She explained in her testimony that she gave this deed as a trust deed for the purpose of having him protect her and the property, but that in fact the land was still hers, although her

husband had the right to do anything he wanted to do with her property, and they alleged in their petition that the title to this 40 acres was in them both. In December, 1917, the defendant and his wife moved from their home in Redbird to this 40 acres of land. He claimed and testified that plaintiffs induced him to move on to the place by offering to give it to him; that his nephew, Curtis, had often talked of giving him a home and providing for him, and his nephew's wife, Sallie, often assented to what her husband said; he had raised the boy and had been good to them after their marriage and they honored and loved him and offered to give him the place as a home and they came with their car and took him and his wife to see the place in December, 1917, after Sallie became of age, and put them in possession of it, and the defendant says he gave up his business in Redbird and moved on to this place on their terms, accepting it as a gift, and had made valuable improvements and paid taxes on it, and they gave him money to assist him, and bought furniture for the house, and said they were going to fix him up good, and never asked him for rent, or for the return of the money they gave him, and he never knew they meant to take the place from him until after he had some trouble with his nephew about the nephew drinking, and when he tried to admonish him in his office his nephew drove him out, telling him that he was no longer a boy, that he was now a man and able to talk to him as a man, and told him he wouldn't do anything for him. The testimony as to the gift and as to the time when he was placed in possession and as to the plaintiffs' buying furniture for him and as to giving the property to him to be his own, was corroborated by several disinterested witnesses. The plaintiffs denied these material facts and said they only placed him in possession of the property as a tenant, but they were contradicted by the witnesses that corroborated the evidence of the defendant. The testimony of W. C. Reid was of such a character in denying the facts proved by defendant and corroborated by the witnesses that the jury were warranted in disregarding his testimony altogether.

We have read all the testimony offered in the case, and are of the opinion that the same is sufficient to sustain the verdict and judgment of the court.

2. The plaintiffs further contend that the court erred in instructing the jury that the burden of proof was upon the plaintiffs instead of instructing the jury that, where the defendant claims title to property by parol gift, the burden of proof is on the one who asserts the gift to prove all the essential elements to consummate the gift.

The record shows that the court's instruction No. 1 was as follows:

"You are instructed that the burden is upon the plaintiffs to prove each and every material allegation of their petition by a fair preponderance of the evidence, and if they fail to do this your verdict shall be for the defendant."

Under the issues in the case this instruction was correct. Plaintiffs had alleged that they were the owners of the land by purchase and they set up their chain of title and alleged that the defendant was unlawfully withholding possession from them, and they took the lead in the trial and assumed the burden of proving the allegations of their petition and it was necessary for them to make out their case, and prove the facts upon which they relied to recover by a preponderance of the evidence. When they introduced the muniments of their title and testified that the defendant was on the land and in possession without their consent and against their will and after notices to quit the premises, they made out a prima facie case, and the burden shifted to the defendant to prove his defense, and with respect to this burden the court instructed the jury in paragraphs 4 and 5 as follows:

"You are instructed that if you find from a preponderance of the evidence that the plaintiffs were the owners of the property involved in this litigation in 1917, and that said plaintiffs gave said land to said defendant in consideration of services rendered by him to said plaintiffs, or either of them, and that said defendant went into possession of said land, with the knowledge and consent of said plaintiffs, and that relying upon the promise and representations of said plaintiffs that said land had been given to him, said defendant erected thereon valuable improvements, and has ever since been in possession of said property, then your verdict should be in favor of said defendant.

"You are further instructed that the burden of proof is upon the party alleging the oral agreement to clearly establish the same, together with the acts constituting the full performance or such performance of the contract as would satisfy a court of equity that it would be inequitable to refuse the relief."

We think these instructions covered the ground of plaintiff's objections and stated the correct rule of law to fix the burden of proof on the respective parties according to the issues in the case, and were sufficient to guide the jury in considering the defendant's side of the case as well as the plaintiffs'.

In the third paragraph of the instructions the court told the jury that a contract to sell or convey real property is "ordinarily" required to be in writing and signed by the person making the sale or conveyance, and plaintiffs took exception to the word "ordinarily" and contend that this was error, when the court should have told the jury that such a contract must be in writing.

We think this language was careless, to say the least of it, and was error, but taken in connection with what follows, as well as all the other instructions, we cannot see how it could have misled the jury, and it certainly did not cause the jury to base their verdict upon a contract not in writing that should have been in writing, since the contract involved was one of the exceptions to the statute and the general rule, and since the court further instructed the jury, after stating the general rule, as follows:

"But you are further instructed that where such contract is fully or partially performed the same is enforceable, and, in this case, you are further instructed that, if you find and believe that the plaintiffs or either of them, while owning the land involved herein, gave or promised to give the defendant such land, and that said defendant, relying upon such promise, went into possession of said land, with the knowledge and consent of the plaintiffs, and changed his position by reason thereof, or made improvements thereon then such gift would be valid and binding upon said plaintiffs and your verdict should be in favor of said defendants."

We think the instructions, all taken together, were sufficient to state the simple rules of law which were practical and easy to be understood by the jury and which were applicable to the evidence and were safe guides for them to reach right conclusions in considering the evidence, and the court committed no error in refusing the requested instructions of the plaintiffs.

3. Plaintiffs earnestly contend that the evidence of defendant was not sufficient to comply with the rule stated in Lucia v. Schaefer. No. 13281, decided by this court June 10, 1924, 109 Okla. 167, 233 Pac. 444, and other cases to the same effect. The record discloses that the material parts of defendant's evidence tended to show he was the uncle of W. C. Reid, and W. C. Reid and Sallie, his wife, were "very fond" of him. He had been as a good father to them; he was poor and they had wealth: that after she was of legal age, November, 1917, in December, the plaintiffs took defendant and his wife in their car out to see this place and offered it to him as a home and he accepted it and gave up his business and res-

idence in Redbird and moved on to this place and plaintiffs assisted him and his wife in getting the house fixed up, in the way of furnishings, and gave him $200 in money and promised him a deed to the land, and he spent a great deal of time as well as money—from $250 to $800—in making improvements and paying taxes and everything was "lovely" between the two families until defendant undertook to admonish his nephew about his bad habit of drinking, and then plaintiffs turned against him and repudiated the gift of the home, and even denied that they ever intended to give him a home or do him any other material favors. Defendant's evidence is strongly corroborated by disinterested witnesses and plaintiffs' evidence is inconsistent with all the facts and circumstances of the case and impeached by the testimony of the disinterested witnesses.

The general rule with reference to parol gifts of lands is stated in 28 C. J. 656, as follows:

"The general rule is that a parol gift of land, accompanied by possession by the donee, will be enforced in equity, when the donee has been induced by the promise of the gift to make valuable improvements to the land, of a permanent nature, and to such an extent as to render a revocation of the gift unjust, inequitable, and a fraud upon the donee. Such a state of facts will take the case out of the statute of frauds, and entitle the donee to enforce specific performance of the gift, or to defend his possession against the donor or his heirs. It must be shown, however, that possession was given and taken in pursuance of, and in reliance on, the gift, with the knowledge and consent of the giver, and that such possession was exclusive."

We are of the opinion that the defendant's evidence was sufficient to meet all the requirements of the above rule as well as the following cases: Johnson v. Baldock, 83 Okla. 285, 201 Pac. 654; Fouts et al. v. Nance, 55 Okla. 266, 155 Pac. 610; Boese v. Childress et al., 83 Okla. 60, 200 Pac. 997; Lucia v. Schaefer, supra.

4. Plaintiffs further contend that the court committed error in overruling their motion for judgment notwithstanding the verdict of the jury. In support of this contention they say in their brief that they rely upon the insufficiency of the evidence of the defendant to prove any of the essential elements to entitle him to specific performance of his alleged parol gift of the property. In view of the fact that we have held, as above stated, that the evidence was sufficient to prove all of the essential elements of the

parol agreement to take the conveyance out of the statute of frauds and to entitle the defendant to specific performance as a defense against the plaintiffs' action, we deem is unnecessary to pursue plaintiffs' argument on this point.

We think the plaintiffs had a fair trial and substantial justice was done between the parties and the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 C. J. p. 208 (1926 Anno); 28 C. J. p. 656; 36 Cyc. p. 681. (2) 19 C. J. p. 1199. (3) 27 C. J. p. 208 (1926 Anno); 28 C. J. pp. 656, 657; 36 Cyc. p. 681. (4) 33 C. J. p. 1184. See under (1, 3) anno. 9 L. R. A. (N. S.) 508; 12 R. C. L. 939; 2 R. C. L. Supp. 1514.